**KIRSCH GARTENBERG HOWARD** <sup>LLP</sup>  
*Co-counsel for Plaintiffs*  
Two University Plaza  
Hackensack, New Jersey  07601  
(201) 488-4644  

**THE GOUGH LAW FIRM** <sup>LLP</sup>  
*Co-counsel for Plaintiffs*  
Two University Plaza  
Hackensack, New Jersey 07601  
(201) 488-1002  

UNITED STATES DISTRICT COURT  
DISTRICT OF NEW JERSEY  
--------------------------------------------------------------------------------X  
DAVID WATSON, individually and as Executor of the ESTATE OF  
NANCY CLARE GIMENEZ-WATSON,  

Plaintiffs,

-against-

SUNRISE SENIOR LIVING SERVICES, INC. d/b/a BRIGHTON  
GARDENS OF EDISON, BRIGHTON GARDENS OF EDISON,  
SUNRISE SENIOR LIVING, INC., JANE DOE NURSES 1-50,  
JANE ROE NURSES, TECHNICIANS, CNA'S AND  
PARAMEDICAL EMPLOYEES 1-50, RICHARD ROES 1-10,  
JANE DOE DIETICIANS 1-50, ABC CORPORATION, ABC  
PARTNERSHIP, and XYZ CORPORATION (these names being  
fictitious as their true names are unknown),  

Defendants.

Docket No. 10-cv-230(SDW)(MCA)

**SECOND AMENDED COMPLAINT WITH JURY DEMAND**

--------------------------------------------------------------------------------X  

Plaintiff David Watson, individually and as Executor of the Estate of Nancy Clare

Gimenez-Watson, residing at 300 West 55th Street, Apt. 11R, New York, New York, by his

attorneys, alleges for his Complaint against the defendants:

**PARTIES**

1.  At all times hereinafter mentioned, plaintiff's decedent Nancy Clare

Gimenez-Watson was a resident of the State of New Jersey.

2.  Plaintiff David Watson, a resident of the State of New York and the son of

Nancy Clare Gimenez-Watson, brings this claim individually and as Executor on behalf of his

mother pursuant to Letters Testamentary issued on February 19, 2009 and on behalf of the wrongful death beneficiaries of Nancy Clare Gimenez-Watson.

      3.    Defendants Sunrise Senior Living Services, Inc. d/b/a Brighton Gardens of Edison and Brighton Gardens of Edison (collectively "SERVICES") were and are foreign corporations engaged in business under the laws of the State of New Jersey, at 1801 Oak Tree Road, Edison, New Jersey, as an assisted living facility, nursing home, and/or long term care facility known as Brighton Gardens that provided nursing care and health related services, lodging and board to the sick, invalid, infirmed, disabled, or convalescent persons, including plaintiff's decedent, all pursuant to 42 U.S.C. §§ 1395i and 1396r, N.J.S. 30:13-2, N.J.A.C. 8:36 *et seq.,* N.J.A.C. 8:39-1.2 and/or 42 C.F.R. § 483.5.

      4.    Defendant Sunrise Senior Living Inc. ("LIVING") is a foreign corporation engaged in business in the State of New Jersey by virtue of its ownership, control, domination and/or management of defendant SERVICES and the facility known as Brighton Gardens, with an office at 7902 Westpark Drive, McLean, Virginia 22102.

      5.    LIVING owned, managed, operated, controlled and directly participated in the operations of SERVICES and the facility known as Brighton Gardens in providing negligent services to plaintiff's decedent, causing the damages, losses, and injuries set forth herein.

      6.    Among other things, LIVING controlled Brighton Gardens for its own benefit to the extent that:

      a.    LIVING regularly transferred funds received by SERVICES to an account controlled by LIVING for its own purposes,

      b.    LIVING set operational and strategic policies for SERVICES, and established the procedures and policies to be followed by that facility in rendering patient care;

      c.    LIVING determined which contractors and vendors would be utilized at Brighton Gardens, including  who would supply food, cleaning products,

phone services, utilities, insurance, pharmacy services, private inspections and surveys, and a other goods and services;

d.   LIVING made and controlled all decisions as to how to balance funds between LIVING and SERVICES based on the priorities of LIVING, to the disregard of SERVICES' needs and interests;

e.   LIVING decided the scope and range of services that were to be offered at Brighton Gardens;

f.   LIVING set the budget and controlled all spending at Brighton Gardens, which included decision making over monies allotted for nurse and aide staffing levels.

g.   LIVING and SERVICES did not function as independent entities.

h.   LIVING determined whether Brighton Gardens could provide appropriate care to residents with changing needs.

i.   LIVING was the employer of all personnel at Brighton Gardens.

j.   SERVICES had no bank accounts or other property of its own.

k.   SERVICES had no capital of its own.

l.   SERVICES had no business or business purpose of its own.

m.   LIVING exercised such control over SERVICES that it constitutes its alter ego.

7.   Defendants Richard Roes 1-10 and XYZ Corporation are owners, directors and/or officers of SERVICES with offices at 7902 Westpark Drive, McLean, Virginia, 22102 who, in concert with the other defendants, owned, managed, operated, controlled or participated in the operation of SERVICES and the facility known as Brighton Gardens, and provided negligent services to plaintiff's decedent, causing the damages, losses, and injuries set forth herein and/or exercised such control that they constitute its alter ego.  Defendants Richard Roes 1-10 and XYZ Corporation are entities or individuals whose identities are presently unknown to plaintiff, and are thus fictitiously designated.

8.     Defendants ABC Corporation and ABC Partnership are a licensed hospital and/or health care facility and/or nursing home and/or assisted living facility and/or long term care facility that also provided nursing care and health related services to plaintiff's decedent but whose identities are presently unknown to plaintiff, and are thus fictitiously designated, who provided negligent services to plaintiff's decedent, causing the damages, losses, and injuries set forth herein.

9.     At all times herein mentioned, defendants John Doe Physicians 1-50 were and are physicians licensed to practice medicine or to provide health care services in the State of New Jersey who were members of the staff of, or had practice privileges at, Brighton Gardens and/or XYZ Entities 1-10, whose identities are not presently known by plaintiffs and are thus fictitiously designated.

10.    At all times herein mentioned, defendants Jane Doe Nurses 1-50 were nurses licensed to provide health care services in the State of New Jersey who were members of the staff of, or had practice privileges at, Brighton Gardens and/or XYZ Entities 1-10, whose identities are not presently known by plaintiffs and are thus fictitiously designated.

11.    At all times herein mentioned, defendants Jane Roe Technicians, CNA's, and Paramedical Employees 1-50 were technicians, certified nursing assistants and/or paramedic personnel licensed to provide health care services in the State of New Jersey who were members of the staff of, or had practice privileges at, Brighton Gardens and/or XYZ Enteritis 1-10, whose identities are not presently known by plaintiffs and are thus fictitiously designated.

12.   At all times herein mentioned, defendants Jane Doe Dieticians 1-50 were dieticians and/or nutritionists licensed to provide nutritional services in the State of New Jersey who were members of the staff of, or had practice privileges at, Brighton Gardens and/or XYZ Entities 1-10, whose identities are not presently known by plaintiffs and are thus fictitiously designated.

## FACTS COMMON TO ALL CAUSES OF ACTION

13.   Defendants LIVING, SERVICES, Richard Roes 1-10 and XYZ Corporation (collectively the "Management Defendants") operated,  managed, controlled and/or directed Brighton Gardens as an adult care facility licensed and defined under N.J.S. 30:13-2 and N.J.A.C. 8:36-1.3.

14.   Defendants John Doe Physicians 1-50, Jane Doe Nurses 1-50, Jane Roe Technicians, CNA's, and Paramedical Employees 1-50, and Jane Doe Dieticians 1-50 (collectively the "Service Defendants") were employed by the Management Defendants and provided health care services to plaintiff's decedent during the period she was a resident at Brighton Gardens.

15.   The Management Defendants are liable for the acts and omissions of the Service Defendants, and of all other staff and operations at Brighton Gardens, in that those personnel were hired by the Management Defendants, were employees of the Management Defendants, and were trained, assigned, directed and managed by the Management Defendants their servants or agents, and the Management Defendants set the policies and procedures to be followed by such personnel at Brighton Gardens.

16.   Plaintiff's decedent entered Brighton Gardens as a "resident", as defined by N.J.S.A. 30:13-2(e) and N.J.A.C. 8:39-1.2, on March 25, 2006, and received continuous and ongoing nursing care and medical treatment through April 11, 2008.

17.   During her residency at Brighton Gardens, plaintiff's decedent was under the exclusive care, custody, control, treatment, rehabilitation and management of the Management Defendants and their employees and agents, including the Service Defendants.

18.   The Management Defendants held themselves and Brighton Gardens out as specialists in the field of adult care and adult nursing care with the appropriate staffing, facilities and expertise necessary to maintain the health and safety of persons unable to care adequately for themselves.

19.   Based upon the Management Defendants' representations, plaintiff's decedent moved in to Brighton Gardens for care of her medical conditions, including, *inter alia*, dementia.

20.   On April 7, 2006, plaintiff's decedent was prescribed Aricept for confusion and talking to herself, which prescription was increased on May 9, 2006, when she also was started on Namenda for behavior including crawling on the floor and visual hallucinations.

21.   On February 19, 2007, the Aricept and Namenda were discontinued because plaintiff's decedent was in advanced stages of dementia.

22.   The Service Defendants had knowledge of the progressive dementia of plaintiff's decedent and that such progression would require increased attention and care by the staff at Brighton Gardens.

23.   On March 26, 2007, plaintiff's decedent refused to eat and the next day was noted to be argumentative.

24.   On May 10, 2007, the Service Defendants notified the physician for plaintiff's decedent that she had suffered severe weight loss which was attributable to the progression of her dementia and difficulty eating.

25.   Despite the progression of the need of plaintiff's decedent for increased attention and care, the staff at Brighton Gardens failed to record any nurse's notes between October 20, 2007 and April 11, 2008.

26.   On April 11, 2008, Brighton Gardens transferred plaintiff's decedent JFK Medical Center because, as described in the Brighton Gardens Resident Transfer Form dated April 11, 2008, she was:

> "choking and turning cyanotic, unresponsive and collapsed and continued after she spit out food and began to gasp for air. Color began to improve and she began to breathe normally. [No] vital signs obtained or were present during her unresponsive period."

27.   Plaintiff's decedent had choked while eating scalloped potatoes when the Service Defendants, including the staff at Brighton Gardens, failed to properly assess her dietary needs, failed to properly prepare her food, and failed to properly supervise her when eating.

28.   Upon information and belief, the staff at Brighton Gardens failed to notify the physician for plaintiff's decedent of the choking event.

29.   Upon information and belief, the Management Defendants and their employees failed to notify the New Jersey Department of Health and Senior Services of the choking incident as required by law.

30.   The Service Defendants, willfully and improperly failed to note in the medical records any details of the reasons for the transfer of plaintiff's decedent to JFK Medical Center on April 11, 2008, or the assessment and observations made by her nurses, or the corrective action needed to prevent further occurrences.

31.   After plaintiff's decedent returned to Brighton Gardens that same day, the staff at that facility, including the Service Defendants, improperly failed to notify the dietician for an assessment and changes to her diet following the choking incident.

32.   After plaintiff's decedent returned to Brighton Gardens, the staff at that facility, including the Service Defendants, improperly failed to obtain a speech therapy consultation for plaintiff's decedent for an assessment and changes to her care plan in response to the choking incident and her decreasing oral intake.

33.   After plaintiff's decedent returned to Brighton Gardens, the staff at that facility employed by defendants facility, including the Service Defendants, improperly failed to provide adequate supervision of plaintiff's decedent when she was eating.

34.   After plaintiff's decedent returned to Brighton Gardens, the staff at that facility, including the Service Defendants, improperly failed to prepare the food given to plaintiff's decedent so to prevent choking.

35.   After plaintiff's decedent returned to Brighton Gardens, the staff at that facility, including the Service Defendants, negligently failed to monitor the effects of Zyprexa, which is associated with swallowing dysfunction, on the ability of plaintiff's decedent to swallow.

36.   On April 12, 2008 a late entry in the Nurse's Note shows that plaintiff's decedent had suffered a fall on April 1, 2008 while being assisted to the toilet and that she fell again three hours later in the dining room.

37.   On April 16, 2008, plaintiff's decedent fell again. .

38.   On April 17, 2008, plaintiff's decedent fell again.

39.   These falls should have indicated to the staff at Brighton Gardens, including the Service Defendants, that the needs for care and attention of plaintiff's decedent had further intensified.  Nevertheless, the defendants failed to assess whether Brighton Gardens was an appropriate placement for plaintiff's decedent and failed to insure that plaintiff's decedent received the care necessary to prevent further life threatening incidents.

40.   On April 26, 2008 plaintiff's decedent suffered a second choking event when the staff at Brighton Gardens, including the Service Defendants, allowed her to eat whole pieces of meat which had been improperly prepared and given to her while she was unattended in the dining room.

41.   Plaintiff's decedent was allowed to eat whole pieces of meat and to be unsupervised in the dining room because the Management Defendants had failed:

a.    to train, instruct, and manage the staff at Brighton Gardens;

b.    to arrange for the transfer of plaintiff's decedent to a facility that could provide a higher level of care after making sure that the that the staff assessed the needs of plaintiff's decedent and determined that the placement at Brighton Gardens was appropriate to her needs;

c.    to insure adequate and appropriately trained staffing at the time at issue.

42.   The staff at Brighton Gardens, including the Service Defendants, willfully and intentionally failed to make any contemporaneous entry in the medical chart recording this second choking incident, failing to record any information until a belated Nurse's Note on April 28, 2008, one day after plaintiff's decedent died.

43.   The Management Defendants and/or the Service Defendants acting at management's direction, willfully and intentionally removed from plaintiff's decedent's medical chart the form used to transfer plaintiff's decedent from Brighton Gardens to JFK Medical

Center in connection with the April 26, 2008 choking event and thereafter failed to include a copy of that form in the medical records subsequently provided to plaintiff's counsel.

44.   The copy of the Brighton Gardens transfer form maintained in the medical records provided by JFK Medical Center show that the staff at Brighton Gardens, including the Service Defendants, had found plaintiff's decedent choking in the dining room, that she had collapsed as a result of the choking, and that two large pieces of meat were removed from her oropharynx by paramedics.

45.   Plaintiff's decedent succumbed to her injuries and died on April 27, 2008 at JFK Medical Center.

46.   While plaintiff's decedent was a resident, the staff at Brighton Gardens, including the Service Defendants, failed:

    a.   to properly perform necessary assessments of her condition;

    b.   to monitor her condition;

    c.   to properly prevent choking;

    d.   to assess plaintiff's decedent's ability to chew properly;

    e.   to assess plaintiff's decedent's ability to take food by mouth;

    f.   to monitor plaintiff's decedent's ability to swallow properly;

    g.   to create and implement a care plan for plaintiff's decedent to prevent accidents and choking;

    h.   to properly prevent dehydration;

    i.   to properly prevent malnutrition;

    j.   to implement appropriate interventions to prevent plaintiff's decedent from falling;

    k.   to perform timely and appropriate work-ups;

    l.   to manage and administer appropriate medications;

    m.   to render timely, appropriate and accurate medical care;

    n.   to develop and implement appropriate plans of care;

    o.   to administer proper medications as prescribed;

    p.   to implement and follow the physician's orders;

q.   to maintain proper staffing;

r.   to properly supervise medical personnel;

s.   to timely notify her next of kin of changes in her condition;

t.   to notify physicians of material changes in her condition;

u.   to keep proper and adequate documentation regarding her care and treatment, including but not limited to, medication and treatment records;

v.   to properly prevent, treat, or help to heal her infections;

w.   to provide for the safety of plaintiff's decedent, including preventing complications and risks associated with aspiration and/or choking;

x.   to timely institute proper nursing interventions;

y.   to comply with their duty not to admit or retain a resident whose needs they cannot meet;

z.   to notify appropriate state authorities of reportable occurrences;

aa.  to have proper communication among the different disciplines;

bb.  to terminate employee(s) that they knew, or should have known, were incompetent.

19.   The Management Defendants had wrongfully and willfully failed to provide appropriate staffing and properly trained staff to permit the foregoing, had failed to respond appropriately to notice of deficiencies in the care provided at Brighton Gardens, and had knowingly kept plaintiff's decedent at Brighton Gardens when that facility was not able to provide appropriate care for her.

20.   While a resident of Brighton Gardens, plaintiff's decedent suffered injuries, including but not limited to, severe weight loss, aspiration and/or choking which caused extreme pain and suffering and the cumulative effect of which was to cause her death.

21.   While a resident of Brighton Gardens, the staff at that facility, including the Service Defendants, rendered care and medical treatment to plaintiff's decedent in a wanton, willful, reckless, and/or negligent manner constituting professional negligence including, but not limited to, failing as the direct and proximate result of defendants' negligence, want of care, and gross and reckless conduct.

11

22.     The provisions of the Federal Nursing Home Reform Amendments of 1987 ("FNHRA")(42 U.S.C. §§ 1395i and 1396r), and the regulations promulgated thereunder, as well as N.J.S. 30-13 *et seq.*, N.J.A.C. 8:36 *et seq.*, and N.J.A.C. 8:39 *et seq.,* and the regulations promulgated thereunder, were applicable with regard to the care and treatment of plaintiff's decedent at Brighton Gardens, and which laws and regulations, and the common law, made defendants responsible for the total care, custody, welfare and well-being of plaintiff's decedent.

23.     Plaintiff's decedent fell within the class of persons the foregoing laws and regulations were intended to protect, thus entitling plaintiff to adopt such laws as the standard of care for measuring defendants' conduct.

## FIRST COUNT
**(Pursuant to N.J.S. 30:13 *et seq.*, N.J.A.C. 8:39 *et seq.*  N.J.A.C. 8:36 *et seq.* and 42 U.S.C. §§ 1395i and 1396r)**

1.     Plaintiff repeats and realleges the allegations contained in the previous paragraphs of this Complaint, as though more fully set forth herein at length.

2.     The acts and/or omissions of defendants, as well as the violation of her rights pursuant to, but not limited to, 42 U.S.C. §§ 1395i and 1396r, and N.J.S. 30:13, *et seq.*, N.J.A.C. 8:36 *et seq.,* N.J.A.C. 8:39 *et seq.* and the regulations promulgated thereunder, substantially contributed to or caused the injuries to plaintiff's decedent.

3.     Defendants violated the applicable laws and regulations that establish the standard of care to be followed by defendants, including, but not limited to:

> a.   Pursuant to 42 C.F.R. § 483.10, the Management Defendants and the staff at the facility, including the Service Defendants, had a duty to assure that residents' rights were followed and to ensure that each resident, including plaintiff's decedent, had a dignified existence and the right to exercise his or her rights as a resident and citizen of the United States.

b.   Pursuant to 42 C.F.R. § 483.30, the Management Defendants and the staff at the facility, including the Service Defendants, had a duty to provide sufficient nursing staff to provide nursing and related services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by the resident's assessment and individual plans of care.

c.   Pursuant to 42 C.F.R. § 483.75 and N.J.A.C. 8:39-5.1(a), the Management Defendants and the staff at the facility, including the Service Defendants, had a duty to administer the nursing home in a manner that enabled it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental and psychosocial well-being of each resident and to operate and provide services and compliance with all applicable federal, state and local laws, regulations, and codes of accepted professional standards.

d.   Pursuant to N.J.A.C. 8:39-4.1(a)(5), the Management Defendants and the staff at the facility, including the Service Defendants, had a duty to keep each resident "free from physical and mental abuse and/or neglect."

e.   Pursuant to N.J.A.C. 8:39-4.1(a)(11), the Management Defendants and the staff at the facility, including the Service Defendants, had a duty to provide each resident with "safe, decent, and clean conditions in a nursing home that does not admit more residents than it can accommodate while providing adequate nursing care."

f.   Pursuant to N.J.A.C. 8:39-4.1(a)(12), the Management Defendants and the staff at the facility, including the Service Defendants, staff had a duty to treat each resident "with courtesy, consideration, and respect for the resident's dignity and individuality."

h.   Pursuant to N.J.A.C. 8:39-13.1(d), the Management Defendants and the staff at the facility, including the Service Defendants, had a duty "to notify the attending physician or advanced practice nurse promptly of significant changes in the resident's medical condition."

i.   Pursuant to N.J.A.C. 8:39-27.1(a), the Management Defendants and the staff at the facility, including the Service Defendants, had a duty "to provide and ensure that each resident receives all care and services needed to enable the resident to attain and maintain the highest practice level of physical (including pain management), emotional and social well-being, in accordance with individual assessments and care plans."

j.   Pursuant to N.J.A.C. 8:39-27.2(e), the Management Defendants and the staff at the facility, including the Service Defendants, had a duty to ensure that "any dehydrated and/or malnourished resident hall be accurately evaluated and effectively treated."

k.   Pursuant to N.J.A.C. 8:39-31.4(a), the Management Defendants and the staff at the facility, including the Service Defendants, had a duty "to provide and maintain a safe, clean and orderly environment for residents."

l.   Pursuant to C.F.R., Section 483.25(c), the Management Defendants and the staff at the facility, including the Service Defendants, had a duty to "ensure that (1) a resident who enters the facility without pressure sores does not develop pressure sores unless the individual's clinical conditions demonstrates that they were unavoidable; and (2) a resident having pressure sores receives necessary treatment and services to promote healing, prevent infection and prevent new sores from developing."

m.   Pursuant to N.J.S.A. 30:13-5(j), the Management Defendants and the staff at the facility, including the Service Defendants, had a duty to provide plaintiff with a safe and decent living environment and considerate and respectful care that recognizes the dignity and individuality of the resident.

n.   Pursuant to N.J.A.C. 8:36-4.1(a)(1), the Management Defendants and the staff at the facility, including the Service Defendants, had a duty to provide plaintiff with personalized services and care in accordance with the resident's individualized general service and/or health service plan.

o.   Pursuant to N.J.A.C. 8:36-4.1(a)(2), the Management Defendants and the staff at the facility, including the Service Defendants, had a duty to provide plaintiff a level of care and services that addresses her changing physical and psychological status.

p.   Pursuant to N.J.A.C. 8:36-4.1(a)(4), the Management Defendants and the staff at the facility, including the Service Defendants, had a duty to treat plaintiff with respect, courtesy, consideration and dignity.

q.   Pursuant to N.J.A.C. 8:36-4.1(a)(16), the Management Defendants and the staff at the facility, including the Service Defendants, had a duty to insure that plaintiff was free from physical and mental abuse and/or neglect.

r.   Pursuant to N.J.A.C. 8:36-4.1(a)(22), the Management Defendants and the staff at the facility, including the Service Defendants, had a duty to provide plaintiff with safe and clean living conditions and to not admit more residents than it can safely accommodate while providing services and care.

s.   Pursuant to N.J.A.C. 8:36-4.1(b), the Management Defendants and the staff at the facility, including the Service Defendants, had a duty to plaintiff and her family to inform them of the residents rights.

t.   Pursuant to N.J.A.C. 8:36-5.1(a), the Management Defendants and the staff at the facility, including the Service Defendants, had a duty to provide and/or coordinate personal care and services to plaintiff, based on assessment by

qualified persons, and the individual needs of each resident, in a manner which promotes and encourages assisted living values.

u.  Pursuant to N.J.A.C. 8:36-5.1(f), the Management Defendants and the staff at the facility, including the Service Defendants, had a duty to residents, such as plaintiff, that required specialized long-term care, to not allow them to remain in the assisted living residence and must transfer them to a long-term care facility that provides the applicable form of specialized care.

v.  Pursuant to N.J.A.C. 8:36-5.6(c), the Management Defendants and the staff at the facility, including the Service Defendants, had a duty to maintain nursing staffing levels in sufficient number and with sufficient ability and training to provide the basic resident care, assistance, and supervision required, based on an assessment of the acuity of the residents' needs.

w.  Pursuant to N.J.A.C. 8:36-5.13(c), the Management Defendants and the staff at the facility, including the Service Defendants, had a duty, if the staff believed, based on a resident's behavior, that the resident poses a danger to herself or others, and that the facility or program is not capable of providing proper care to the resident, then the attending physician, in consultation with facility staff and a resident representative, shall determine whether the resident is appropriately placed in that facility or program.

x.  Pursuant to N.J.A.C. 8:36-7.3(a), the Management Defendants and the staff at the facility, including the Service Defendants, had a duty to revise the general service plan as needed based upon the resident's response to the care provided and any changes in the resident's physical or cognitive status.

y.  Pursuant to N.J.A.C. 8:36-7.3(c), the Management Defendants and the staff at the facility, including the Service Defendants, had a duty to document in the plaintiff's medical records the review and any necessary revision of the resident service plan and/or health service plan.

z.  Pursuant to N.J.A.C. 8:36-7.3(f), the Management Defendants and the staff at the facility, including the Service Defendants, had a duty to reassess plaintiff's general service or health service plan in response to changes in the resident's functional and/or cognitive status at least annually and more frequently if such reassessment is predicated on a change in the resident's functional and/or cognitive status.

aa.  Pursuant to N.J.A.C. 8:36:7.5(a), the Management Defendants and the staff at the facility, including the Service Defendants, had a duty to arrange for health care services for the plaintiff as needed, in accordance with assessments and with the health service plan. The administrator shall develop a system to identify the residents receiving health care services.

bb.  Pursuant to N.J.A.C. 8:36-7.5(c), the Management Defendants and the staff at the facility, including the Service Defendants, had a duty to notify the

registered professional nurse at the onset of illness, injury or change in condition suffered by plaintiff for assessment of plaintiff's nursing care needs or medical needs and for needed nursing care intervention or medical care.

cc.  Pursuant to N.J.A.C. 8:36-7.5 (d), the Management Defendants and the staff at the facility, including the Service Defendants, had a duty to ensure that resident's physician or physician's designee is notified by the licensed professional nurse of any significant changes in the resident's physical or cognitive/mental condition and any intervention by the physician shall be recorded.

dd.  Pursuant to N.J.A.C. 8:36-15.4, the Management Defendants and the staff at the facility, including the Service Defendants, had a duty to maintain all records for a period of 10 years after the discharge of a resident from the assisted living residence.

ee.  Pursuant to N.J.A.C. 8:36-15.6(d), the Management Defendants and the staff at the facility, including the Service Defendants, had a duty to record all assessments and treatments by health care and service providers into the plaintiff's medical records according to the standards of professional practice. Documentation and/or notes from all health care and service providers shall be entered according to the standards of professional practice.

ff.  Pursuant to N.J.A.C. 8:36-19.1, if the Management Defendants and the staff at the facility, including the Service Defendants, develop programs to meet the needs of residents of Alzheimer's disease or other dementias, such programs shall provide individualized care based upon assessment of the cognitive and functional abilities of Alzheimer's and dementia residents who have been admitted to the program.

gg.  Pursuant to N.J.A.C. 8:36-19.2(a), because the Management Defendants held Brighton Gardens out as having an Alzheimer's/dementia program, they must have written policies and procedures for the Alzheimer's/dementia program that are retained by the administrative staff and available to all staff and to members of the public, including those participating in the program.

hh.  Pursuant to N.J.A.C. 8:36-4149.2(b), the Management Defendants and the staff at the facility, including the Service Defendants, had a duty to establish a criteria for admission to the program and criteria for discharge from the program when the resident's needs can no longer be met, based upon a registered professional nurse's assessment of the resident's cognitive and functional status.

4.    The foregoing responsibilities and obligations owed to plaintiff's decedent were non-delegable and the Management Defendants have direct and/or vicarious liability for

violations, deprivations, and infringements of such responsibilities and obligations by any person or entity under their control, direct or indirect, including their employees, agents, consultants, and independent contractors, or caused by defendant's policies, whether written or unwritten, or common practices.

5.     The acts and omissions committed by employees and agents of the Management Defendants were pervasive events that occurred and continued throughout the residency of plaintiff's decedent at defendants' facilities, and were such that supervisors, administrators and managing agents of the Management Defendants should have been aware of them.

6.     As a direct and proximate result of the foregoing willful, wanton, and/or negligent deviations from the standard of care, plaintiff's decedent suffered serious injuries including, but not limited to, malnutrition and aspiration and/or choking which culminated in her death.

7.     In addition to the damages suffered by plaintiff's decedent as the result of the foregoing deprivation of her rights, justice requires that plaintiff is entitled to recovery of attorney's fees, costs, and punitive damages pursuant to N.J.S. 30:13 *et seq.*

WHEREFORE, David Watson, individually and as Executor of the Estate of Nancy Clare Gimenez-Watson, prays for judgment against defendants, jointly and severally, for damages, interest, and costs, plus attorney's fees and punitive damages.

## SECOND COUNT
### (Gross Negligence)

1.      Plaintiff repeats and realleges the allegations contained in the previous paragraphs of this Complaint, as though more fully set forth herein at length.

2.      The Management Defendants and the staff at Brighton Gardens, including the Service Defendants, owed a duty to residents, including plaintiff's decedent, to protect their rights pursuant to applicable federal and state law, to provide medical care and treatment in accordance with the applicable standards of care.

3.      The Management Defendants and the staff at the facility, including the Service Defendants, acted or failed to act in such a manner as to show a complete disregard for the rights and safety of plaintiff's decedent by acting intentionally, recklessly, or with knowledge that such conduct had a high degree of probability of resulting in harm to plaintiff's decedent, and in circumstances where appropriate action was clearly required, so as to indicate disregard of the consequences of their actions or inaction.

4.      The Management Defendants and their agents and employees were aware of widespread deficiencies in the care and treatment received in Brighton Gardens, before, during, and after the residency of plaintiff's decedent, and refused and/or failed to implement adequate measures to correct and prevent the recurrence of same.

5.      The Management Defendants and their agents and employees were on notice of violations of state and federal laws and regulations setting minimum standards of care which violations placed residents, including plaintiff's decedent, in serious danger of injury and/or illness.

6.     The Management Defendants knowingly, willfully, and/or deliberately failed to properly hire, train, supervise and/or monitor staff, and failed to implement policies and procedures to correct institutional-wide problems.

7.     As a direct and proximate result of the foregoing willful, wanton, and/or grossly negligent deviations from the standard of care, plaintiff's decedent suffered serious injuries including, but not limited to, vertebral fractures, fracture of her right hip, severe dehydration, malnutrition, infection and pressure ulcers, the cumulative effect of which was to cause her death.

WHEREFORE, David Watson, individually and as Executor of the Estate of Nancy Clare Gimenez-Watson, prays for judgment against defendants, jointly and severally, for damages, interest, and costs, plus attorney's fees and punitive damages.

### THIRD COUNT
**(Negligence)**

1.     Plaintiff repeats and realleges the allegations contained in the previous paragraphs of this Complaint, as though more fully set forth herein at length.

2.     The Management Defendants, their agents, officers, servants, and employees, including the staff at Brighton Gardens and the Service Defendants, failed, refused and/or neglected to perform their duty to provide reasonable and adequate healthcare to and for plaintiff's decedent, who was unable to attend to her own health and safety.

3.     As a direct and proximate result of the foregoing negligent deviations from the standard of care, plaintiff's decedent suffered serious injuries including, but not limited to, severe dehydration, malnutrition, infection, and renal failure, which culminated in her death.

WHEREFORE, David Watson, individually and as Executor of the Estate of Nancy Clare Gimenez-Watson, prays for judgment against defendants, jointly and severally, for damages, interest, and costs, plus attorney's fees and punitive damages.

**FOURTH COUNT**
**(Medical Malpractice and Professional Negligence)**

1.    Plaintiff repeats and realleges the allegations contained in the previous paragraphs of this Complaint, as though more fully set forth herein at length.

2.    At all material times, plaintiff's decedent was under the medical diagnosis, care and treatment of the Management Defendants and the Service Defendants, their agents, servants and employees.

3.    During such time, plaintiff's decedent made various complaints and exhibited symptoms to defendants including severe pain.

4.    The acts and omissions committed by the Management Defendants and the Service Defendants, their agents, servants and employees were pervasive events that occurred and continued throughout the residency of plaintiff's decedent at Brighton Gardens, and were such that supervisors, administrators and managing agents of defendants should have been aware of them.

WHEREFORE, David Watson, individually and as Executor of the Estate of Nancy Clare Gimenez-Watson, prays for judgment against defendants, jointly and severally, for damages, interest, and costs, plus attorney's fees and punitive damages.

## FIFTH COUNT
### (Wrongful Death)

1.    Plaintiff repeats and realleges the allegations contained in the previous paragraphs of this Complaint, as though more fully set forth herein at length.

2.    Plaintiff's decedent sustained severe bodily injury resulting in wrongful death as a result of defendants' negligence.

3.    Plaintiff's decedent left surviving next of kin and distributees who became liable for and expended money for funeral and other expenses and who have suffered pecuniary and other damages.

WHEREFORE, David Watson, individually and as Executor of the Estate of Nancy Clare Gimenez-Watson, prays for judgment against defendants, jointly and severally, for damages, interest, and costs, plus attorney's fees and punitive damages.

## SIXTH COUNT
### (Piercing the Corporate Veil)

1.    Plaintiff repeats and realleges the allegations contained in the previous paragraphs of this Complaint, as though more fully set forth herein at length.

2.    Living dominates and controls Services, to the extent that Services is merely a sham corporation in that:

   a.   The only duties of the President of Services is to sign license applications, so that Services functions as little more than an applicant for assist living facility licenses.

   b.   Services maintained no books or records of its own.

   c.   The profits from Services' facilities, including Brighton Gardens, are swept into an account controlled by another subsidiary from which Living withdraws amounts whenever and for whatever purposes it deems necessary in its sole discretion.

   d.   Living set the operational and strategic course for Services, including Brighton Gardens.

   e.   Living determined which contractors and vendors would be utilized at each of

Services' facilities, including Brighton Gardens and controlled payment of vendors.

f.   Living decided whether to sell any of Services' facilities to raise money for new capital projects.

g.   Living decided how to balance funds between Living and Services.

h.   Living decided the scope and range of services that Services offers at its facilities.

i.   Living's Chief Operating Officer had the authority to hire or fire any staffer at any of Services' facilities, including Brighton Gardens.

j.   Living sets and controls Brighton Gardens' budgets and revenues, including salaries of all management personnel, which budgets and revenues directly affected the quality of the care provided to plaintiff's decedent.

k.   Living controls all bank accounts and pays all bills of Brighton Gardens, which does not have any bank accounts that are used for business operations in its own name or in the name of Services.

l.   Living set the clinical care and operating policies followed by Brighton Gardens, and enforced compliance with those policies, including those relevant to the mistreatment of plaintiff's decedent, *i.e.* the "Choking or Blocked Airway" policy.

m.   Living is an officer of Brighton Gardens and seven other facilities located in New Jersey, as set forth in the Department of Health and Senior Services website.

n.   Living determined not to hire someone to replace a key management member at Brighton Gardens who was on leave at the time of the choking incidents at issue herein.

o.   Living ran the training and in-service programs for Brighton Gardens' staff.

p.   Living oversaw the preparation of Brighton Gardens for state surveys by the Department of Health and Senior Services.

q.   Both the former administrator of Brighton Gardens and Living's regional manager identified Living, which is located in McClean, Virginia, as Services' "headquarters".

r.   Living determined whether Brighton Gardens could provide appropriate care for plaintiff's decedent, despite her changing needs.

s.   The address for Services provided in its residency agreement is the same as Living's address in Virginia and Services uses Living's address and phone number in its listing on the DOHSS website.

t.   Living currently operates 311 communities with a total capacity of 30,733, received over $464 million in resident fees (paying itself over $96 million in management fees), a portion of which comes from its New Jersey facilities, including Brighton Gardens.

u.   Living was the employer of all personnel at Brighton Gardens.

v.       Services had no bank accounts or other property of its own.

w.       Services had no capital of its own.

x.       Services had no business or business purpose of its own.

3.    Living exercised such control over Services that it constitutes its alter ego.

WHEREFORE, plaintiff prays for judgment piercing the corporate veil and finding Sunrise Senior Living, Inc. liable for all amounts awarded as compensatory or punitive damages against Sunrise Senior Living Services, Inc. or Brighton Gardens at Edison and/or their officers and employees, with costs, attorney's fees and such other relief as is proper.

**SEVENTH COUNT**
**(Liability under the participation theory and under N.J.A.C. 8:36-5.2(c))**

1.    Plaintiff repeats and realleges the allegations contained in the previous paragraphs of this Complaint, as though more fully set forth herein at length.

2.    By reason of the extent of its participation in and control of the operations of Brighton Gardens, Living participated in the mistreatment, lack of care, neglect and other acts and omissions that caused the injury at issue to plaintiff's decedent.

3.    By reason of the extent of its participation in and control of the operations of Brighton Gardens, Living constituted the "governing authority" of Brighton Gardens as that term is used in N.J.A.C. 8:36-5.2(c) and assumed legal responsibility for the management and operation of that facility, including the care provided to plaintiff's decedent.

WHEREFORE, plaintiff prays for judgment against Sunrise Senior Living, Inc. for all amounts herein awarded as compensatory or punitive damages, with costs, attorney's fees and such other relief as is proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

**CERTIFICATION PURSUANT TO R. 4:5-1**

I certify pursuant to R. 4:5-1 that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, and that no other action or arbitration proceeding is contemplated. I further certify that all appropriate person or entities have, to the best of my knowledge, been joined as parties in this action.

Dated: August 30, 2012

KIRSCH GARTENBERG HOWARD LLP

By: s/Thomas S. Howard
     *Co-counsel for Plaintiff*

THE GOUGH LAW FIRM
Two University Plaza
Suite 400
Hackensack, New Jersey  07601
*Co-counsel for Plaintiff*

s:\h\gough - watson 3744.016\pleading\complaints and answers\second amended complaint.docx