<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DAVID WATSON, individually and as Executor of the ESTATE OF NANCY CLARE GIMENEZ-WATSON, | : : : : |
| Plaintiff, | : Civil Action No. 10-230 (KM) : |
| v. | : : OPINION |
| SUNRISE SENIOR LIVING SERVICES, INC. d/b/a BRIGHTON GARDENS OF EDISON, et al., | : : : : |
| Defendants. | : : |

**I.   INTRODUCTION**

This matter comes before the Court on Plaintiff David Watson's ("Plaintiff" or "Watson") cross-motion for leave to file a Third Amended Complaint. <u>See</u> Cross-mot. to Amend, D.E. 167, 168. Specifically, Plaintiff seeks to add a claim for fraudulent concealment of evidence and to pursue punitive damages in connection with that proposed claim. Pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1, the Court decided this motion without oral argument. For the reasons set forth below, the Court will deny Plaintiff's motion.

**II.   BACKGROUND**

**A. Relevant Facts**

The Court writes for the parties' benefit. Also, the Court's Opinion on Plaintiff's motion to file a Second Amended Complaint fully sets forth the background of this case. <u>See</u> Opinion, Jan. 8, 2013, D.E. 106. Therefore, a complete recitation of the factual allegations against each defendant in this Opinion is unnecessary. Instead, the Court will discuss only the facts relevant

to the current motion.

Plaintiff brings this action individually, as Executor on behalf of his mother, Nancy Clare Gimenez-Watson ("Gimenez-Watson"), and on behalf of Gimenez-Watson's wrongful death beneficiaries against def

Defendants Sunrise Senior Living Services, Inc., d/b/a/ Brighton Gardens of Edison ("Brighton Gardens") and Sunrise Senior Living, Inc. ("SSLI") (collectively, "Defendants"). See Prop. Third Am. Compl., at ¶¶ 1-2, Ex. A to Pl.'s Cross-mot. to Amend, Aug. 4, 2014, D.E. 167-2.[1]  This action arises from Gimenez-Watson's residency at Brighton Gardens, an assisted living facility, nursing home, and long-term adult care facility. See id. at ¶ 3. On March 25, 2006, Gimenez-Watson entered Brighton Gardens as a "resident,"[2] where she "received continuous and ongoing nursing care and medical treatment through April 11, 2008" for her various medical conditions, including dementia. See id. at ¶¶ 13, 16, 19. During her residency at Brighton Gardens, Gimenez-Watson was "under the exclusive care, custody, treatment, rehabilitation and management of [Defendants] and their employees and agents." See id. at ¶ 17.

On April 11, 2008, Brighton Gardens transferred Gimenez-Watson to JFK Medical Center after she choked ("First Choking Incident") while eating scalloped potatoes. See id. at ¶¶ 26-27. Plaintiff claims that Gimenez-Watson choked because Brighton Gardens' staff did not properly assess Gimenez-Watson's dietary needs, prepare her food, and supervise her during meals. See id. Moreover, Plaintiff claims that the health care providers at Brighton Gardens

---

[1] For the purposes of the motion to amend, the Court must accept as true all well pleaded allegations in the proposed amended complaint. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

[2] A "resident" is "any individual receiving extended medical or nursing treatment or care at a nursing home." N.J.S.A. 30:13-2(e); see also N.J.A.C. 8:39-1.2 (defining "resident" as "a person who resides in [a long-term care] facility and is in need of 24-hour continuous nursing supervision").

"willfully and improperly failed" to update Gimenez-Watson's medical records to reflect why she was transferred to JFK Medical Center, and failed to indicate any corrective action to prevent similar future incidents.  See id. at ¶ 30.

Plaintiff further alleges that although Gimenez-Watson fell twice on April 1, 2008, a nurse did not record these falls until April 12, 2008.  See id. at ¶ 36.  Plaintiff claims that Gimenez-Watson fell again on April 16 and April 17, 2008.  See id. at ¶¶ 37, 38.  However, Brighton Gardens' staff did not ensure that she received the necessary care to prevent such future "life-threatening incidents."  See id. at ¶ 39.  On April 26, 2008, Gimenez-Watson choked again ("Second Choking Incident") when the Brighton Gardens' staff "allowed her to eat whole pieces of meat [that] had been improperly prepared and given to her while she was unattended in the dining room."  See id. at ¶ 40.  As a result, Gimenez-Watson collapsed, and paramedics removed two large pieces of meat from her oropharynx.  See id.  On April 27, 2008, Gimenez-Watson died at JFK Medical Center.  See id. at ¶ 45.

Plaintiff alleges that Defendants failed to produce incident reports for the First and Second Choking Incidents,[3] even though Brighton Garden's policy required employees to prepare such reports.  See id. at 24 ¶¶ 7, 9; see also Decl. of Thomas S. Howard ("Howard Decl.") in Supp. of Pl.'s Opp'n Br., at ¶ 3, D.E. 167-1.  For instance, Plaintiff claims that Nurse Ellen Hesse ("Nurse Hesse") prepared an incident report for Plaintiff's First Choking Incident, made a contemporaneous entry in Plaintiff's medical chart describing the incident, and reported the incident to her supervisor.  See Prop. Third Am. Compl. at 23-24, ¶ 6, Aug. 4, 2014, D.E.

---

[3] There appears to be a typographical error in the Proposed Third Amended Complaint's Seventh Count, Paragraph 9 regarding Plaintiff's Second Choking Incident.  See Ex. A to Pl.'s Cross-mot. to Amend, at 24 ¶ 9, Aug. 4, 2014, D.E. 167.  Although Plaintiff alleges in Paragraph 9 that Defendants failed to produce the April 25, 2008 incident report, Plaintiff refers to April 26, 2008 as the Second Choking Incident's date throughout the rest of the Proposed Complaint.  The discrepancy does not affect the Court's decision on Plaintiff's cross-motion to amend.

167-2. Regarding the Second Choking Incident, Plaintiff claims that the Brighton Gardens' staff "willfully and intentionally failed to make any contemporaneous entry" in Gimenez-Watson's medical chart until April 28, 2008, one day after she passed away. See id. at ¶ 42. However, Plaintiff alleges that Defendants neither produced the incident reports for either choking incident, nor sufficiently explained their failure to do so. See id. at 24, ¶ 9.

Further, Plaintiff claims that Gimenez-Watson's Medication Administration Records ("MARs"), which are daily records indicating her schedule of medications, were "fabricated after the fact" to falsely document medication administered to her in April 2008. See id. at 24-25 ¶¶ 11, 14, 17. For instance, Plaintiff alleges that although Gimenez-Watson was transferred to the hospital on April 26, 2008 after her Second Choking Incident, Gimenez-Watson's MARs erroneously indicate that she was at the hospital on April 24, 2008, and that Defendants ceased administering her medication on that morning. See id. at 25 ¶ 15. Thus, Plaintiff claims that because Defendants did not create the MARs when they administered Plaintiff's medication, Defendants altered her records. See id. at 25 ¶ 14.

**B.  Procedural History**

On November 25, 2009, Plaintiff filed his six-count Complaint against Defendants in the Superior Court of New Jersey, Law Division, Middlesex County, alleging:  (1) violations of the New Jersey Nursing Home Bill of Rights, N.J.S.A. 30:13-1 et seq. and the Federal Nursing Home Reform Amendments of 1987, 42 U.S.C. §§ 1395i and 1396r; (2) gross negligence; (3) negligence; (4) medical malpractice and professional negligence; (5) wrongful death; and (6) deprivation of civil rights under 42 U.S.C. § 1983. See Ex. A to Notice of Removal, Jan. 14, 2010, D.E. 1.  On January 14, 2010, Defendants removed the action to the United States District Court, District of New Jersey.  See Notice of Removal, D.E. 1.

On March 22, 2010, the Court held a scheduling conference and subsequently issued a Pretrial Scheduling Order. See Pretr. Sched. Order, Mar. 22, 2010, D.E. 22. The Pretrial Scheduling Order set an October 15, 2010 deadline for fact discovery, and a July 1, 2010 deadline to add new parties or to amend the pleadings. See id. at ¶¶ 1-3.

On April 19, 2012, Plaintiff filed a motion for leave to request various discovery. See Pl.'s Mot. for Discovery, Apr. 19, 2012, D.E. 87. In that motion, Plaintiff tried clarifying his punitive damages claims, by asserting that they "arise out of [D]efendants' concealment of material evidence . . . [and] alteration of records after the fact." See Pl.'s Response to Mot. for Discovery, at 6, May 10, 2012, D.E. 89. Defendants opposed Plaintiff's motion. See Defs.' Opp'n Br., May 3, 2012, D.E. 88. As a result, on July 12, 2012, the parties appeared before the Court for a hearing, where the Court extended the deadline for any applications in support of a motion to amend the complaint until August 30, 2012. See Order, D.E. 92. Thereafter, on August 17, 2012, the Court again extended the deadline for any motions to amend the complaint until September 13, 2012. See Consent Order, Aug. 17, 2012, D.E. 96.

On September 13, 2012, the deadline to file any motions to amend pleadings, Plaintiff filed a motion for leave to file a Second Amended Complaint to add claims based on alter ego liability and on participation theory.[4] See Pl.'s Mot. to Amend Compl., Sept. 13, 2012, D.E. 97. Defendants opposed the motion. See Defs.' Cross-mot. and Opp'n Br., Sept. 27, 2012, D.E. 99. On January 8, 2013, the Court granted Plaintiff's motion to allow him to add his proposed alter-ego liability claim, and denied Plaintiff from adding his proposed participation theory claim. See

---

[4] Plaintiff previously filed a cross-motion to amend the Complaint. See Cross-mot. to Amend, May 24, 2010, D.E. 49. All defendants consented, see Letter, Oct. 13, 2010, D.E. 68, and thus the Court deemed Plaintiff's First Amended Complaint filed as of October 14, 2010. See Order, D.E. 69. Plaintiff's First Amended Complaint asserted the same counts as his original Complaint. Compare D.E. 51-11 with Ex. A of Notice of Removal, Jan. 14, 2010, D.E. 1.

5

Opinion, Jan. 8, 2013, D.E. 106.

Thereafter, the Court extended the fact discovery deadline four times: (1) on January 23, 2013, the Court extended the deadline to February 5, 2013, see Order, D.E. 109; (2) on February 27, 2013, the Court granted an extension until May 15, 2013, see Order, D.E. 114; (3) on June 13, 2013, the Court extended the deadline to August 13, 2013, see Am. Sched. Order, D.E. 130; and (4) on September 12, 2013, the Court extended the deadline to two weeks after August 13, 2013, see Order, D.E. 140.[5]  However, none of the corresponding Orders changed the September 13, 2012 deadline by which a party could amend the pleadings.  See Orders, D.E. 109, 114, 130, 140.  Indeed, the record does not reflect that any party sought to extend the deadline to amend during this timeframe.

On June 13, 2014, Defendants moved for summary judgment.  See Defs.' Mot. for Summary Judgment, D.E. 158.  Plaintiff opposed Defendants' motion and cross-moved for leave to file a Third Amended Complaint.[6]  See Pl.'s Opp'n Br. and Cross-mot. to Amend., Aug. 4, 2014, D.E. 167, 168.  In turn, Defendants oppose Plaintiff's cross-motion to amend.  See Defs.' Reply Br. and Opp'n Br., Aug. 22, 2014, D.E. 171.

---

[5] In the Court's September 12, 2013 Order, the Court extended discovery for two weeks only with respect to the parties' outstanding discovery dispute concerning Brighton Gardens' financial statements.  See Order, D.E. 140.

[6] To support this cross-motion to amend, Plaintiff relies on the brief and accompanying documents in his opposition to Defendants' summary judgment motion.  See D.E. 167.

Also, on September 2, 2014, Plaintiff requested leave to file a reply in support of his cross-motion for leave to amend, and attached a proposed Reply brief.  See Pl.'s Ltr. and Prop. Reply Br., D.E. 172.  The Court granted the request on September 11, 2014.  Thus, the Court considers Plaintiff's Reply when analyzing this motion.  See Order, D.E. 174.

### III. SUMMARY OF THE ARGUMENTS

#### A. Plaintiff

Plaintiff moves to amend his Second Amended Complaint to add a count for fraudulent concealment of material evidence. See Pl.'s Cross-mot. to Amend, at 25, Aug. 4, 2014, D.E. 167, 168. Specifically, Plaintiff alleges that Defendants concealed evidence in two instances: (1) when Defendants failed to produce incident reports related to Gimenez-Watson's two choking incidents; and (2) when Defendants "fabricated" Gimenez-Watson's MARs "after the fact" to falsely document her medication administrations in April 2008. See Pl.'s Prop. Third Am. Compl., Ex. A. to Pl.'s Cross-mot. to Amend, at 23-26 ¶¶ 1-20, Aug. 4, 2014, D.E. 167-2; see also Howard Decl., at 2 ¶ 3, D.E. 167-1.

In support of his motion, Plaintiff primarily relies on Rosenblit v. Zimmerman, a malpractice case where the court sets forth five elements that a plaintiff must establish for the tort of fraudulent concealment. 166 N.J. 391, 406-07 (2001); see also Pl.'s Cross-mot. to Amend, at 25, D.E. 167. Plaintiff contends that he has established a prima facie case for fraudulent concealment under Rosenblit because: (1) Defendants had a legal obligation to disclose both incident reports and the MARs; (2) such documents contain material evidence related to the care, or lack of care, provided to Gimenez-Watson; (3) the concealed evidence could not be reasonably obtained from another source; (4) Defendants' fabrication of the Medication Record is "plain on [its] face" because the only explanation for its dating error is that the document was not created contemporaneously, but was instead altered "after the fact"; and (5) Plaintiff suffered damages because the actual incident reports and true medication records would have revealed more information about the events during Gimenez-Watson's last month of her life. See Pl.'s Cross-mot. to Amend, at 25-36, D.E. 167; Rosenblit, 166 N.J. at 406-07.

7

Plaintiff contends that leave to amend should be granted under Federal Rule of Civil Procedure 15 because Plaintiff's new claim clarifies the requested punitive damages. See Pl.'s Cross-mot. to Amend, at 34, Aug. 4, 2014, D.E. 167.  Plaintiff argues that adding the proposed claim will not cause undue prejudice because Plaintiff has "mentioned it repeatedly in the past," and thus it should not surprise Defendants. See Pl.'s Reply Br., at 2, Sept. 2, 2014, D.E. 172-1. Plaintiff also asserts that adding the proposed claim "does not require any further discovery." See id.  Thus, Plaintiff argues that he may recover punitive damages for Defendants' intentional wrongdoing. See Pl.'s Cross-mot. to Amend, at 26, Aug. 4, 2014, D.E. 167.

### B. Defendants

Defendants oppose Plaintiff's motion and contend that allowing the amendment would cause undue delay, undue prejudice, and is futile. See Defs.' Opp'n Br., at 9, Aug. 22, 2014, D.E. 171.  First, Defendants argue that Plaintiff's "last-ditch attempt to maintain a claim of punitive damages," will cause undue delay because Plaintiff had ample opportunity to amend his Complaint but waited until after Defendants filed for summary judgment. See id. at 10. Defendants further assert that although Plaintiff files this motion three years after first raising the fraudulent concealment issue in 2011, Plaintiff fails to offer any justification for his undue delay. See id.

Second, Defendants contend that allowing Plaintiff to add his new claim at this late stage in the litigation will prejudice Defendants. See id. at 11. Defendants' prejudice argument seems to mirror their undue delay argument.

Third, Defendants argue that Plaintiff's proposed claim regarding the incident reports and the MARs is futile. See id.  Defendants maintain that Plaintiff cannot establish a cause of action for fraudulent concealment of evidence under Rosenblit. See id.  Defendants also argue that

8

Plaintiff fails to meet his heavy burden of proving punitive damages.  See id. at 16-18.

### IV.   DISCUSSION

"The threshold issue in resolving a motion to amend is the determination of whether the motion is governed by Rule 15 or Rule 16 of the Federal Rules of Civil Procedure."  Karlo v. Pittsburgh Glass Works, LLC, No. 10-1283 (NBF), 2011 WL 5170445, at *2 (W.D. Pa. Oct. 31, 2011).  Rule 15 provides, in pertinent part, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  On the other hand, "Rule 16 . . . requires a party to demonstrate 'good cause' prior to the Court amending its scheduling order."  Karlo, 2011 WL 5170445, at *2 (citing Fed. R. Civ. P. 16(b)(4)).  While there sometimes might be "tension" between the standards of the two Rules, id. at *2 n.3, Third Circuit courts "have consistently reached the same conclusion:  a party seeking to amend the pleadings after the deadline set by the Court must satisfy the requirements of Rule 16(b)(4)—i.e., that party must show 'good cause.'"  Id. at *2; see also Dimensional Commc'n, Inc. v. OZ Optics, Ltd., 148 F. App'x 82, 85 (3d Cir. 2005) (instructing that the Third Circuit has adopted a good cause standard when determining the propriety of a motion to amend after the deadline has elapsed).

Here, Rule 16 governs Plaintiff's motion.  On August 17, 2012, the Court extended the October 15, 2010 deadline for any applications to amend the pleadings until September 13, 2012.  See Consent Order, at ¶ 2, D.E. 96.  Because Plaintiff filed his motion on August 4, 2014, approximately two years after the deadline, he must demonstrate good cause under Rule 16 to amend the pleadings.[7]  See Pl.'s Cross-Mot. to Amend, D.E. 167.

---

[7] Although an explicit pretrial scheduling deadline triggers Rule 16(b)(4), it is not necessary.  Phillips v. Greben, No. 04-5590, 2006 WL 3069475, at *6-7 (D.N.J. Oct. 27, 2006).  For example, in Phillips, the court found that Rule 16(b) applied even though the scheduling

9

However, neither party addresses whether good cause exists under Rule 16. Instead, the parties discuss Plaintiff's motion only under Rule 15's "more lenient" standard. See Charles A. Wright et al., 6A Federal Practice and Procedure, § 1522.2 (3d ed. 2010). Nevertheless, the Court will first examine whether Plaintiff has shown good cause for his failure to comply with the Court's Scheduling Order. See Pretr. Sched. Order, Mar. 22, 2010, D.E. 22; Consent Order, Aug. 17, 2012, D.E. 96.

**A. Rule 16(b)**

Rule 16 of the Federal Rules of Civil Procedure authorizes courts to enter scheduling orders. The pretrial scheduling order allows a court to take "judicial control over a case and to schedule dates for completion by the parties of the principal pretrial steps." Harrison Beverage Co. v. Dribeck Imps., Inc., 133 F.R.D. 463, 469 (D.N.J. 1990) (quoting Fed. R. Civ. P. 16 Advisory Committee Notes to the 1983 Amendment); see also Newton v. A.C. & S., Inc., 918 F.2d 1121, 1126 (3d Cir. 1990) (stating that the purpose of Rule 16 is to provide for judicial control over cases, streamline proceedings, maximize efficiency of the court system, and actively manage the timetable of case preparation to expedite speedy and efficient disposition of cases).

Generally, a scheduling order must, among other things, "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). The deadline for amending pleadings in the pretrial scheduling order "assures that at some point . . . the pleadings will be fixed." Fed. R. Civ. P. 16(b) Advisory Committee Notes

---

order did not set a deadline to amend the pleadings because "it was certainly clear that any possibility to amend the pleadings would expire when discovery closed." Id. at *6. Here, fact discovery, which the Court extended four times, ended two weeks after August 13, 2013, thereby providing the parties ample opportunity to amend beyond the fact discovery deadline. See Order, Sept. 12, 2013, D.E. 140. Thus, whether viewed from the Court's explicit expired deadline to amend pleadings two years ago, or from the end of fact discovery one year ago, Plaintiff must demonstrate good cause to extend the deadline to amend the pleadings.

to the 1983 Amendment; see also Harrison, 133 F.R.D. at 469 ("The careful scheme of reasonable framing and enforcement of scheduling orders for case management would thus be nullified if a party could inject amended pleadings upon a showing of less than good cause after scheduling deadlines have expired."). The burden is on the moving party to show "good cause" for its failure to comply with the applicable scheduling order, and accordingly, for the Court to allow its proposed amended pleading. Prince v. Aiellos, No. 09-5429 (JLL), 2012 WL 1883812, at *6 (D.N.J. May 22, 2012) (quoting Graham v. Progressive Direct Ins. Co., 271 F.R.D. 112, 118 (W.D. PA. 2010)); see also Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 614 F.3d 57, 84 (3d Cir. 2010) (affirming the trial court's holding that "Rule 16(b)(4) focuses on the moving party's burden to show due diligence").

To demonstrate good cause, the moving party must show "due diligence." Race Tires Am., 614 F.3d at 84. In other words, "[a]bsent diligence, there is no 'good cause.'" Chancellor v. Pottsgrove Sch. Dist., 501 F. Supp. 2d 695, 702 (E.D. Pa. 2007). Typically, when analyzing the moving party's diligence, courts consider whether the movant "possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired." Smith v. Honeywell Int'l, Inc., No. 10-CV-03345 (ES/JAD), 2014 WL 301031, at *6 (D.N.J. Jan. 27, 2014) (citations omitted); see also Stallings ex rel. Estate of Stallings v. IBM Corp., No. 08-3121 (RBK/JS), 2009 WL 2905471, at *16 (D.N.J. Sept. 8, 2009) (denying plaintiffs' motion to amend because they "had sufficient information to state the proposed claims well in advance of the Scheduling Order deadline"); Kennedy v. City of Newark, No. 10-1405 (CCC/JAD), 2011 WL 2669601, at *2 (D.N.J. July 7, 2011) ("The most common basis for finding a lack of good cause is the party's knowledge of the potential claim before the deadline to amend has passed."). Further, "good cause may be

satisfied if the movant shows that the delay in filing the motion to amend stemmed from 'any mistake, excusable neglect or any other factor which might understandably account for failure of counsel to undertake to comply with the Scheduling Order.'" Phillips v. Grebon, No. 04-5590 (GEB), 2006 WL 3069475, at *6 (D.N.J. Oct. 27, 2006) (citing Newton v. Dana Corp. Parish Div., No. 94-4958, 1995 WL 368172, at *1 (E.D. Pa. 1995)).

Moreover, if a movant knew about the need to file a motion to amend before the deadline expired, or if the movant did not satisfactorily explain the delay, the court may deny the motion. See, e.g., Dimensional Commc'n., Inc. v. OZ Optics, Ltd., 148 F. App'x 82, 85 (3d Cir. 2005) (upholding trial court's ruling that the movant could not show "good cause" because it possessed the facts underlying its proposed counterclaim well before the deadline to amend); Harrison, 133 F.R.D. at 469 (movant failed to satisfactorily explain delay in filing untimely motion to amend).

Here, Plaintiff fails to demonstrate good cause to modify the Court's September 13, 2012 deadline. Plaintiff argues that the Court should grant his motion because the new fraudulent concealment claim provides more detail on his punitive damages claims. See Pl.'s Cross-mot. to Amend, at 34, Aug. 4, 2014, D.E. 167. However, the record demonstrates that Plaintiff possessed sufficient knowledge to file his proposed amendment well before the deadline to do so expired. Defendants correctly point out that in Plaintiff's own brief, he concedes to raising the issue of Defendants' alleged concealment and/or alterations of the incident reports and the MARs in his prior briefs. See Defs.' Opp'n Br., at 10, Aug. 22, 2014, D.E. 171; Pl.'s Cross-mot. to Amend, at 33, Aug. 4, 2014, D.E. 167.

Indeed, in Plaintiff's motion for discovery, dated May 10, 2012, Plaintiff asserts that his claims for punitive damages, "arise out of [D]efendants' concealment of material evidence . . . [and] alteration of records after the fact . . . ." See Pl.'s Response to Mot. for Discovery, at 6,

D.E. 89.  Plaintiff asserts that he relies on the following facts:

1. Nurse Eileen Hesse testified that she prepared an Incident Report immediately following the April 11th choking incident, which she left on her supervisor's desk in accordance with company policy . . . . That Incident Report has never been produced by defendants and defendants have never accounted for its absence.

2. Pursuant to [D]efendant's Policy, an Incident Report also should have been prepared for the choking incident on April 26th.  Again, however, [D]efendants have failed to produce that material evidence or explain what happened to it.

3. According to [Gimenez-Watson's] medical chart, the fatal choking incident occurred at about 5 p.m. on April 26th, yet, the treatment record for [Gimenez-Watson] in April show that she received care even after she left Brighton Gardens, with initials showing medication on April 26th and April 27th at 11 p.m. . . . The obvious inaccuracy must call into question the reliability of all the records since the medi[c]ation administration record is supposed to reflect when medications were given.

Id. at 6-7.  However, Plaintiff uses these same facts to support his current motion to amend.  For example, Plaintiff relies on Nurse Hesse's June 1, 2011 deposition to explain why he alleges that Defendants concealed the First Choking Incident's report.   In fact, Plaintiff cites to pages 27:20 through 28:5 of Nurse Hesse's June 1, 2011 deposition transcript in both motions to establish that Nurse Hesse prepared the incident report after Gimenez-Watson's First Choking Incident.  Compare  Ex. 1[8] to Reply Decl. of Thomas S. Howard ("Howard Reply Decl.") in Supp. of Pl.'s Response to Mot. for Discovery, May 10, 2012, D.E. 89 with Ex. 2 to Howard Decl., at 27, D.E. 167-4.  Because Nurse Hesse prepared an incident report and Defendants failed to produce a copy of it to Plaintiff, Plaintiff argues in both motions that Defendants fraudulently and intentionally destroyed the report.  See Pl.'s Response to Mot. for Discovery, at 6-7, May 10,

---

[8] Although Thomas S. Howard states in his Declaration that Exhibit 1 are excerpts from Nurse Hesse's deposition transcript from March 12, 2012, Exhibit 1 is actually excerpts from Nurse Hesse's deposition transcript from June 1, 2011.  See Howard Reply Decl., at ¶ 2, D.E. 89-1.

13

2012, D.E. 89; Pl.'s Mot. to Amend, at 25-26, Aug. 4, 2014, D.E. 167.

Similarly, in both the motion for discovery and current motion to amend, Plaintiff relies on Defendants' incident reporting policy to allege that Defendants fraudulently concealed Gimenez-Watson's Second Choking Incident's report. Compare Ex. 2 to Howard Reply Decl., D.E. 89-3 with Ex. 20 to Howard Decl., D.E. 167-22. A review of some of the parties' correspondence in 2011 shows that Plaintiff was concerned about an incomplete medical record and thus, requested that Defendants produce, among other things, a copy of Defendants' incident reporting policy. See Ex. 1, 3 to Pl.'s Ltr., Oct. 18, 2011, D.E. 81. Accordingly, Defendants provided Plaintiff with a copy of their policy. See Ex. 2 to Pl.'s Ltr., D.E. 81. Later, in the motion for discovery, Plaintiff asserts that although Defendants' policy mandated that Defendants' employees prepare an incident report for Gimenez-Watson's Second Choking Incident, Defendants did not produce one. See Pl.'s Response to Mot. for Discovery, at 6-7, D.E. 89. Thus, Plaintiff argued that Defendants concealed this relevant evidence. See Pl.'s Response to Mot. for Discovery, at 6, May 10, 2012, D.E. 89. Nonetheless, Plaintiff makes this exact argument in his motion to amend based on the same incident reporting policy. See Pl.'s Reply, at 1, Sept. 2, 2014, D.E. 172; Ex. 20 to Howard Decl., D.E. 167-22.

Further, Plaintiff relies on the same page of Gimenez-Watson's treatment record in both motions to argue that Defendants altered the MARs "after the fact."[9] Compare Ex. 3 to Howard Reply Decl., D.E. 89-4 with Ex. 6 to Howard Decl., at 6, D.E. 167-8. Specifically, an employees' initials for April 26 and April 27, 2008 in the treatment record illustrate that Gimenez-Watson received care at Brighton Gardens on those days. See id. However, Gimenez-

---

[9] The Court notes that the MARs attached to Plaintiff's motion to amend includes the entire copy of Gimenez-Watson's MARs for April 2008 while the MARs attached to Plaintiff's motion for discovery only includes one page.

Watson suffered her Second Choking Incident on April 26, 2008, was subsequently transported to the hospital, and died on April 27, 2008.  See Pl.'s Mot. for Discovery, at 2, Apr. 19, 2012, D.E. 87-1; Prop. Third Am. Compl. ¶¶ 40, 45, Ex. A to Pl.'s Cross-Mot. to Amend, Aug. 4, 2014, D.E. 167-2.  Therefore, Plaintiff argues that Defendants could not have administered medicine to Gimenez-Watson on April 26 and April 27, 2008 at Brighton Gardens as indicated on the treatment record.  In both motions, Plaintiff asserts that the dating error in the MARs proves that the documents were fabricated "after the fact."  See Pl.'s Response to Mot. for Discovery, at 6-7, D.E. 89; Pl.'s Cross-mot. to Amend, at 26, Aug. 4, 2014, D.E. 167.

Accordingly, it is clear from Plaintiff's motion for discovery that Plaintiff knew about the facts underlying the new proposed claim before the deadline to amend expired.  See Harrison, 133 F.R.D. at 469 ("This is most definitely not a motion in which any of defendant's six proposed new affirmative defenses arose from recent discovery in the case").  At that point, Plaintiff could have moved to amend his Complaint to add a claim against Defendants for fraudulently concealing evidence but failed to do so.  On September 13, 2012, the deadline for any applications to amend, Plaintiff moved to amend his Complaint, but Plaintiff did not seek to add a claim for fraudulent concealment of evidence.  See Pl.'s Mot. to Amend, D.E. 102.  Rather, Plaintiff moved to add only claims based on alter ego liability and participation theory.  See id.  Plaintiff now seeks to add the fraudulent concealment claim.  See Pl.'s Cross-mot. to Amend, Aug. 4, 2014, D.E. 167.

In sum, this motion does not allege recent production or disclosure of previously undisclosed evidence, nor that Plaintiff now has the benefit of information that he did not previously possess.  Instead, the proposed amendment comes two years after the court-ordered deadline to amend, and one year after the end of fact discovery, which the Court extended four

times. Therefore, the Court must conclude under Rule 16 that Plaintiff has failed to demonstrate good cause.

Moreover, Defendants correctly assert that Plaintiff provides no justification for the untimely amendment. See Defs.' Opp'n Br., at 10, Aug. 22, 2014, D.E. 171. Instead, Plaintiff simply states that he is now moving to add a claim for fraudulent concealment of evidence to "respond . . . to [D]efendant's motion for summary judgment, which seeks to dismiss all claims for punitive damages." See Pl.'s Cross-mot. to Amend, at 25, Aug. 4, 2014, D.E. 167. Plaintiff neither acknowledges his delay in seeking amendment nor attempts to explain if any mistake or neglect caused his delay. See, e.g., Thoman v. Phillips Med. Sys., No. 04-3698 (GEB), 2007 WL 203943, at *10 (D.N.J. Jan. 24, 2007) (finding no good cause where a plaintiff intended to assert one claim but instead asserted another); Cf. Coulson v. Town of Kearny, No. 07-5893 (PGS), 2010 WL 331347, at *4 (D.N.J. Jan. 19, 2010) (finding good cause where equipment failure caused movant to miss deadline to amend pleadings by sixty-three minutes); WebXchange Inc. v. Dell Inc., No. 08-132 (JJF), 2010 WL 256547, at *2-3 (D.Del. Jan. 20, 2010) (finding good cause where movant lacked necessary information before amending its pleading to add claims).

Finally, although Defendants do not provide substantiation for their conclusory assertion of prejudice, "[t]he absence of prejudice to the non-moving party does not constitute 'good cause.'" Harbor Laundry Sales, Inc. v. Mayflower Textile Servs. Co., Civ. No. 09-6259, 2011 WL 6303258, at *3 (D.N.J. Dec. 16, 2011) (citing GlobespanVirata, 2005 WL 1638136, at *3). Put succinctly, "[a]bsent diligence, there is no 'good cause.'" Chancellor v. Pottsgrove Sch. Dist., 501 F. Supp. 2d 695, 702 (E.D. Pa. 2007); see also Fed. R. Civ. P. 16(b), advisory committee's note (1983 Amendment) ("[T]he court may modify the schedule on a showing of

good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). Further, the Court finds that allowing Plaintiff to add his new claim at this very late date may unduly delay these proceedings. Fact discovery has been complete for well over a year. The summary judgment motions have been fully briefed and are pending before the District Court. To allow the introduction of new theories of recovery at this stage in the litigation would likely require entirely new or additional briefing, and further delay this already five-year-old case. Therefore, even if Plaintiff is correct that the amendment would not necessitate additional discovery, the potential prejudice from the late amendment is manifest.

The record thus demonstrates that Plaintiff possessed sufficient knowledge to file his proposed claim well before the deadline to amend expired, and that Plaintiff did not explain his delay in amending earlier. Therefore, the Court concludes that Plaintiff has not exercised reasonable diligence in avoiding unnecessary delays. If Plaintiff were reasonably diligent, he would have met reasonable scheduling deadlines, or at a minimum, requested reasonable extensions to meet unforeseen events. Because nothing unforeseen occurred here, the Court concludes that Plaintiff has not demonstrated good cause to justify granting this motion. Moreover, because good cause does not exist to allow Plaintiff to file the proposed Third Amended Complaint, the Court need not consider other bases to evaluate this motion. See E. Minerals & Chemicals Co. v. Mahan, 225 F.3d 330, 340 (3d. Cir. 2000) (affirming the trial court's holding that because good cause to modify the scheduling order did not exist under Rule 16(b), the court need not examine the plaintiff's Rule 15(a) argument).[10]

---

[10] This decision does not preclude Plaintiff from pursuing his punitive damages claims. This Court takes no position on the merits of those claims, or the admissible evidence Plaintiff may introduce to pursue those claims.

**Conclusion**

For the foregoing reasons, Plaintiff's cross-motion for leave to file a Third Amended Complaint [D.E. 167, 168] is denied.  An appropriate Order accompanies this Opinion.

*s/ Michael A. Hammer*
**United States Magistrate Judge**

Dated:  March 18, 2015